J-S02035-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANITA L. MALLICONE, | : | |
| | : | |
| Appellant | : | No. 1261 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 24, 2019
in the Court of Common Pleas of Adams County
Criminal Division at No(s):  CP-01-CR-0000784-2017

BEFORE:  BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    FILED MARCH 18, 2020

Anita L. Mallicone ("Mallicone") appeals from the judgment of sentence imposed following her conviction of one count each of driving under the influence ("DUI") of a controlled substance and following too closely, and three counts each of aggravated assault by vehicle, and aggravated assault by vehicle while DUI.[1]  We affirm.

On April 14, 2017, while driving westbound on Route 30 in Cumberland Township, Adams County, Mallicone was involved in a three-vehicle accident. The five individuals who were in the other two vehicles involved suffered injuries, several of which were severe.

The investigating officer, Cumberland Township Police Patrol Sergeant Timothy J. Biggins ("Sgt. Biggins"), spoke with Mallicone when he arrived on

_____

[1] 75 Pa.C.S.A. §§ 3802(d)(2), 3310(a), 3732.1, 3735.1.

the scene.  Sgt. Biggins noticed that Mallicone's face was flushed; her speech seemed abnormal; and she was "on [] a rollercoaster of emotion," so he asked her whether she was diabetic or had taken any medications.  Mallicone told Sgt. Biggins that she had taken several antidepressants approximately 30 minutes prior to the accident.  Because Sgt. Biggins believed that Mallicone was impaired, he contacted Officer Ryan Eiker ("Officer Eiker"), a drug recognition expert, to conduct field sobriety tests.

Officer Eiker arrived at the scene approximately 15 to 20 minutes later. While speaking with Mallicone, Officer Eiker observed that her pupils were constricted, and her speech was slow and slurred.  Officer Eiker asked Mallicone to submit to field sobriety tests.  Mallicone indicated that she had a back problem from a prior accident, but she agreed to perform the tests. According to Officer Eiker, Mallicone's performance on the tests showed signs of impairment.  Officer Eiker placed Mallicone under arrest for DUI, and transported her to the police station for a drug recognition evaluation ("DRE").

Officer Eiker evaluated Mallicone using the DRE's 12-step standardized process.  Based on his observations, Officer Eiker concluded that Mallicone was under the influence of central nervous system depressants.  Officer Eiker also opined that Mallicone was incapable of driving safely, and recommended chemical testing.  Based on the DRE, Officer Eiker advised Sgt. Biggins of his belief that Mallicone was under the influence of central nervous system depressants.  Mallicone was transported to Gettysburg Hospital for chemical

testing. Sgt. Biggins read Mallicone the implied consent warnings[2] and asked her to submit to a blood test, and Mallicone agreed.

The toxicology test resulted in positive findings for gabapentin at 4 micrograms per milliliter, clonazepam at 13 nanograms per milliliter, 7-amino clonazepam at 17 nanograms per milliliter, venlafaxine at 760 nanograms per milliliter, O-desmethylvenlafaxine at 170 nanograms per milliliter, fluoxetine at 190 nanograms per milliliter, and norfluoxetine at 100 nanograms per milliliter.

On April 4, 2019, a jury found Mallicone guilty of three counts each of aggravated assault by vehicle, and aggravated assault by vehicle while DUI. The trial court found Mallicone guilty of DUI – controlled substance and following too closely. The trial court deferred sentencing and ordered preparation of a pre-sentence investigation report. The trial court sentenced Mallicone to an aggregate term of 60 months of intermediate punishment, with a 9-month restrictive portion, and restorative sanctions for the remainder. Additionally, the trial court ordered Mallicone to pay restitution,

_____

[2] Our review of the record confirms that Sgt. Biggins read the implied consent warnings contained in the updated Pennsylvania State Police DL-26B form, which had been revised in response to the decision of the United States Supreme Court in Birchfield v. North Dakota, 136 S. Ct. 2160 (2016). In Birchfield, the Supreme Court concluded that blood tests taken pursuant to implied consent laws constitute an unconstitutional invasion of privacy. Id. at 2186. The Supreme Court stated that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." Id.

fines, costs, and other fees. Mallicone filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Mallicone raises the following questions for our review:

I. Whether the trial court abused its discretion in precluding [Mallicone's] expert witness from rebutting scientific and medical evidence of [the] Commonwealth's expert witness, ostensibly because the scope of [Mallicone's] expert testimony was not within the "four corners" of [Mallicone's] expert's report, but the expert's testimony was in response to the issues raised by the Commonwealth's expert during their case-in-chief[?]

II. Whether the trial court's decision to preclude [Mallicone's] expert from rebutting the scientific conclusions testified to by the Commonwealth's expert during their case-in-chief was prejudicial and non-harmless error[?]

Brief for Appellant at 3.[3]

We will address Mallicone's issues together. In her first claim, Mallicone asserts that the trial court erred by precluding testimony from her medical toxicology expert, Lawrence Guzzardi, M.D. ("Dr. Guzzardi"), regarding her allegedly "elevated" blood levels of venlafaxine. Id. at 8. According to Mallicone, the Commonwealth objected to Dr. Guzzardi's testimony as being

_____

[3] In its Opinion, the trial court indicates that Mallicone "waived her right to be heard on the merits because she failed to serve the court with her Notice of Appeal." Trial Court Opinion, 9/10/19, at 1-2 (unnumbered); see Pa.R.A.P. 906(a)(2) (requiring an appellant to serve a copy of notice of appeal upon the trial court). However, the trial court was aware that Mallicone had filed a Notice of Appeal, as evidenced by the court's entry of a concise statement Order and subsequent Pa.R.A.P. 1925(a) Opinion. Consequently, this procedural misstep has not hindered our review, and we will address the merits of Mallicone's claims.

outside the "four corners" of his report, but claims that no such rule exists in criminal law. Id. Additionally, Mallicone points out that Dr. Guzzardi's testimony was offered to rebut an issue that had first been raised by the Commonwealth. Id. at 10. Mallicone acknowledges that Dr. Guzzardi's expert report did not contain specific information concerning blood levels, but claims that it did include his opinion that Mallicone was not under the influence of her prescribed medications. Id. at 11; see also id. at 12 (arguing that, for this reason, the Commonwealth would not be surprised by Dr. Guzzardi's testimony). Further, Mallicone avers that the Commonwealth cannot "complain that it was prejudiced by a response to the theory that its own expert developed." Id. at 11.

In her second claim, Mallicone argues that the preclusion of Dr. Guzzardi's rebuttal testimony was not harmless error, because the issue of intoxication was critical to finding Mallicone guilty of aggravated assault by vehicle while DUI. Id. at 12-13.[4]

We observe the following standard of review:

> A trial court has broad discretion to determine whether evidence is admissible[,] and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion. Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such

---

[4] We note that Mallicone's harmless error claim is not adequately supported by relevant case law or citations to the record. See Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent.").

- 5 -

> lack of support to be clearly erroneous.  Moreover, … the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion.  An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.  Where the evidentiary question involves a discretionary ruling, our scope of review is plenary, in that the appellate court may review the entire record in making its decision.

Commonwealth v. Huggins, 68 A.3d 962, 966 (Pa. Super. 2013) (citations, quotation marks, and paragraph breaks omitted).

"[T]here are no specific procedural rules governing expert reports in criminal cases aside from Pa.R.Crim.P. 573, which relates to discovery." Commonwealth v. Roles, 116 A.3d 122, 131 (Pa. Super. 2015); see also Pa.R.Crim.P. 573(B)(1)(e) (requiring the Commonwealth to disclose to the defense the results of any expert opinions), (D) (providing that both parties have a continuing duty to disclose evidence that is requested prior to trial and subject to disclosure).  Nevertheless, this Court has stated that neither "the Commonwealth [n]or a defendant has carte blanche to allow an expert to testify beyond the information contained in his or her report.  To hold otherwise would eviscerate the requirement that reports be disclosed." Roles, 116 A.3d at 131-32.

Relevantly, the Commonwealth introduced at trial the testimony and expert report of medical toxicologist J. Ward Donovan, M.D. ("Dr. Donovan"). In his report, Dr. Donovan opined that "Mallicone was impaired by the antidepressant venlafaxine, in combination with other antidepressants and

sedative agents." Dr. Donovan's Report, 6/15/18, at 2 (unnumbered); see also N.T., 4/3/19, at 251 (wherein Dr. Donovan's Report was admitted into evidence at trial as Commonwealth's Exhibit 22). Specifically, Dr. Donovan cited "elevated levels of venlafaxine, in combination with therapeutic levels of other sedating agents, and the presence of known adverse effects of these medications." Dr. Donovan's Report, 6/15/18, at 3 (unnumbered). Additionally, at trial, Dr. Donovan testified that Mallicone's lab results showed high levels of venlafaxine, even in light of conflicting reports regarding the dosage Mallicone was taking at the time of the accident. N.T., 4/3/19, at 252-53. Dr. Donovan opined that "the cause of [Mallicone's] inability to drive safely was the medication [v]enlafaxine[,] and particularly the addition of some single[,] or maybe two or three[,] acute doses in the very few hours before this happened...." Id. at 270.

By contrast, Dr. Guzzardi's expert report stated his opinion that "medications taken by [] Mallicone did not cause impairment or render her incapable of safely driving a motor vehicle." Dr. Guzzardi's Report, 11/26/17, at 4 (unnumbered); see also N.T., 4/3/19, at 410 (wherein Dr. Guzzardi's Report was admitted into evidence at trial as Defendant's Exhibit 4). Dr. Guzzardi also indicated in his report that he believed "the levels of drugs present in this matter are consistent with [] Mallicone taking her medications as directed." Dr. Guzzardi's Report, 11/26/17, at 3 (unnumbered). At trial, Dr. Guzzardi stated that Mallicone's "elevated" levels of venlafaxine were, in

fact, a normal variant occurring in approximately 25% of people, based on an individual's metabolism. See N.T., 4/3/19, at 399. During a sidebar discussion, the Commonwealth objected, asserting that the basis for this opinion regarding the "elevated" levels of venlafaxine was not included in Dr. Guzzardi's expert report. Id. at 400-01. The trial court prohibited Dr. Guzzardi from testifying to the relationship between poor metabolism and an apparently "elevated" level of venlafaxine found in the chemical test. Id. at 403; see also id. (wherein the trial court asked whether the report specified, based on medical records, that Mallicone was within the subset of people who cannot process venlafaxine, and the assistant district attorney replied in the negative).

The trial court addressed Mallicone's challenge to the preclusion of Dr. Guzzardi's testimony as follows:

> [Mallicone's] claim that [the trial court] abused its discretion appears to be based on a reference made during a 30[-]second sidebar discussion during trial[,] addressing [the] Commonwealth's objection to the fact that the opinions being elicited from Dr. Guzzardi went beyond the scope of [his] expert report. [The trial court] is fully aware that Pa.R.Crim.P. 573 does not utilize the words "four corners" in articulating what needs to be in an expert report. ... [Mallicone] wanted Dr. Guzzardi to testify to matters not discussed in or fairly inferred from his report. If courts allowed experts to testify to whatever they wanted regardless of what they put in the report, the report itself would become meaningless.

> At the trial in this case, the Commonwealth's expert[, Dr. Donovan,] had already testified and had been excused by the time Dr. Guzzardi testified for [Mallicone]. The Commonwealth properly expected Dr. Guzzardi to testify in [Mallicone's] case[-]in[-]chief to what he included in his report. It would be unfair to

the Commonwealth then to allow Dr. Guzzardi to testify to information not in his report without giving the Commonwealth a fair opportunity to rebut his testimony with their own expert.

[Mallicone] attempted to get Dr. Guzzardi to testify to the effect that one of the drugs [Mallicone] had taken prior to her accident would have on her liver. [Mallicone] believed that Dr. Guzzardi could testify to the drug's effect on her liver and her alleged poor metabolization showing that she was not intoxicated, but Dr. Guzzardi made no such assertion in his report. To put it bluntly, the expert report contained zero information in regards to the effect that the drugs would have on her liver and her poor metabolization in processing those drugs.

[The trial court's] decision to preclude Dr. Guzzardi from testifying beyond the scope of his report was not based on any prejudice or ill-will to [Mallicone], but in the interest of fairness to the Commonwealth, recognizing the purpose of providing expert reports to the opposing side. Furthermore, there was nothing manifestly unreasonable [in] limiting Dr. Guzzardi's testimony to the fair scope of the conclusions and reasoning he included in his report.

Trial Court Opinion, 9/10/19, at 4-5 (unnumbered) (footnote omitted). We discern no abuse of discretion in the trial court's determination that the objected-to portion of Dr. Guzzardi's testimony was beyond the scope of his expert report.

Moreover, Mallicone has failed to demonstrate that the absence of the contested portion of Dr. Guzzardi's testimony resulted in prejudice. See Commonwealth v. Taylor, 209 A.3d 444, 449 n.3 (Pa. Super. 2019) (stating that for an evidentiary ruling concerning the admission of expert testimony to constitute reversible error, "it must have been harmful or prejudicial to the complaining party. A party suffers prejudice when the trial court's error could have affected the verdict." (citation and quotation marks omitted)). While we

agree with Mallicone's assertion that intoxication is a critical component of her aggravated assault by vehicle while DUI conviction,[5] Mallicone notably fails to demonstrate, much less argue, that there was insufficient evidence to support the jury's finding that she was intoxicated at the time of the accident.[6] Dr. Guzzardi's challenged testimony related only to the levels of venlafaxine. However, even if this testimony had been admitted, and the jury believed that the levels of venlafaxine were normal for Mallicone, the jury would still be permitted to find that Mallicone was intoxicated as a result of the combination of medications she admitted to taking that day. See generally Commonwealth v. Tarrach, 42 A.3d 342, 345 (Pa. Super. 2012) (stating that a DUI – controlled substances conviction "does not require proof of a specific amount of a drug in the driver's system. It requires only proof that the driver was under the influence of a drug or combination of drugs to a degree that the ability to drive is impaired." (emphasis added)); Dr. Donovan's Report, 6/15/18, at 2 (unnumbered) (wherein Dr. Donovan opined that "Mallicone was impaired by the antidepressant venlafaxine, in combination with other antidepressant and sedative agents." (emphasis added)). Thus,

_____

[5] A person is guilty of aggravated assault by vehicle while DUI if she "negligently causes serious bodily injury to another person as a result of a violation of section 3802 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree with the violation is the cause of the injury." 75 Pa.C.S.A. § 3735.1(a) (emphasis added).

[6] Significantly, Mallicone does not challenge the sufficiency of the evidence supporting her conviction of DUI – controlled substances.

any error resulting from the trial court's preclusion of this testimony was harmless. Commonwealth v. Moury, 992 A.2d 162, 176 (Pa. Super. 2010) (stating that an error is harmless if this Court concludes "beyond a reasonable doubt that the error could not have contributed to the verdict.") (citation omitted).

Based upon the foregoing, Mallicone is not entitled to relief on her claims. We therefore affirm Mallicone's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/2020